UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  19-cv-61496-RAR

**DANIEL MONCADA**,

    Plaintiff,

vs.

**INTRIGUE COUTURE, INC., a
Florida for-profit Corporation**

    Defendant.

_____/

**PLAINTIFF'S APPLICATION FOR ATTORNEY'S FEES COSTS AND
LITIGATION EXPENSES WITH SUPPORTING MEMORANDUM OF LAW**

    Plaintiff, DANIEL MONCADA, by and through undersigned counsel and in compliance with this Court's Order Granting Plaintiff's Motion for Default Final Judgment [ECF No. 11], hereby applies to the Court for an award of his attorneys' fees and costs incurred in this case as follows:

    1.    Plaintiff brought this action for declaratory and injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.  Plaintiff also brought this action for declaratory and injunctive relief to prevent discrimination which includes equal access to Defendant's mobile internet website for services and to access Defendant's services online.  Plaintiff further brought this action for declaratory and injunctive relief to prevent the continuing act of trespass against the Plaintiff's personal property (his personal computer), and for compensatory damages to Plaintiff for such trespass.

2.      On August 22, 2019, the Court ordered the Clerk to enter a Clerk's Default because of the Defendant's failure to respond to the properly served Complaint. [ECF No. 8].

3.      On August 23, 2019, a Clerk's Default was entered in the case pursuant to the Court's Order [ECF No. 9].

4.      On August 30, 2019, Plaintiff filed his Motion for Default Final Judgment Against Defendant Intrigue Couture with Incorporated Supporting Memorandum of Law [ECF No. 10].

5.      On August 31, 2019, in its Order Granting Plaintiff's Motion for Default Judgment [ECF No. 11] and the Final Default Judgment [ECF No. 12], the Court entered judgment in Plaintiff's favor for all the relief being requested in the Complaint, and further ruled that Plaintiff was entitled to his reasonable attorney's fees, costs and litigation expenses, and to make application therefor within 30 days.

6.      As evidenced by the attached Affidavits of Plaintiff's undersigned counsel, Roderick V. Hannah, Esq., and Pelayo M. Duran, Esq. – attached respectively as Exhibits "A" and "B" -- Plaintiff, through her counsel, has incurred a total of $4,547.50 in attorneys' fees based on 5.00 hours of attorney time at $425.00 per hour for Plaintiff's lead attorney, Roderick V. Hannah, Esq., and 5.7 hours of attorney time at $425.00 per hour for Mr. Hannah's co-counsel, Pelayo M. Duran, Esq.

7.      Mr. Hannah has over 34 years of litigation and trial experience in South Florida, including handling a wide array of cases in the Southern District of Florida. As lead or sole counsel, he has handled many federal cases involving discrimination matters, including cases arising under the ADA in both the employment and public accommodation contexts. Given the extensive experience of Mr. Hannah, Plaintiff submits that his claimed fee of $425.00 per hour and the

number of hours expended through the present date, including the preparation of this Motion and supporting Affidavit – 5.00 total hours -- to be reasonable.  *See* Affidavit of Roderick V. Hannah, Esq., Exhibit "A".

8. Mr. Duran has over 21 years of litigation experience in South Florida and has handled and been involved in numerous cases in the Southern District of Florida, including cases arising under the ADA involving public accommodation discrimination. Given the experience of Mr. Duran, Plaintiff submits that his claimed fee of $425.00 per hour and the number of hours he expended through the present date – 5.7 total hours -- to be reasonable. *See* Affidavit of Pelayo M. Duran, Esq., Exhibit "B".

9. Attached to Mr. Hannah's supporting Affidavit as Exhibit "1" is Mr. Hannah's time detail report showing the total number of hours he expended on this matter and the description of the tasks he did with the hours expended for each task.  Attached as Exhibit "1" to Mr. Duran's supporting Affidavit is his time detail report showing the total number of hours he expended on this matter and the description of the tasks he did with the hours expended for each task.

10. Attached as Exhibit "C" hereto is the retainer agreement between Plaintiff and his counsel setting forth the terms of the applicable fee agreement between Plaintiff and counsel and evidencing an agreed upon hourly rate of $425.00 for each of her attorneys.

11. In addition, Plaintiff seeks to recover $1,935.00 in litigation expenses incurred in this case comprised of the expert witness fee and services of his expert, Robert D. Moody, whose invoice for services based on an hourly rate of $325.00 is attached as Exhibit "D".  Mr. Moody's C.V. as to his expert qualifications is attached as Exhibit "E".

12. Plaintiff also seeks to recover his taxable costs incurred in this case in the amount of $526.50 pursuant to 28 U.S.C. §1920.  The costs are for the filing fee, the service of process fee and

costs, and relevant copying charges necessarily incurred in the case. A copy of the Bill of Costs is attached as Exhibit "F". *See also* Affidavit of Roderick V. Hannah, Esq., Exhibit "A" at ¶17.

12.     Based on the proceedings and Court Orders in this case, the attached attorney time detail, costs, and litigation expense records, and the arguments set forth in the below supporting memorandum of law, Plaintiff submits that he is entitled to an award of his costs in the amount of $526.50, litigation expenses of Plaintiff's expert in the amount of $1,935.00, and reasonable attorney's fees in the amount of $4,547.50.

## SUPPORTING MEMORANDUM OF LAW

### I.     The amount of attorney's fees is reasonable.

#### A. The lodestar method.

The Eleventh Circuit follows the "lodestar" method described in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), which held that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," since this computation "[p]rovides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* at 433; *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988). Once the Court calculates this amount—the "lodestar"—it must consider whether any adjustments are warranted based on the results obtained by counsel. *Id.* at 1302.

The party seeking an award of fees bears the burden of documenting and substantiating both the number of hours and the hourly rate. *ACLU of Georgia v. Barnes*, 168 F.3d. 423, 427(11th Cir. 1999). In determining reasonable hourly rates in South Florida, the Court may also consider certain factors, including "the attorney's customary fee, the skill required to perform the

legal services, the attorney's experience, reputation and ability, the time constraints involved, preclusion of other employment, contingency, the undesirability of the case, the attorney's relationship to the client, and awards in similar cases." *Mallory v. Harkness*, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996) (citing factors articulated in *Johnson v. Ga. High. Express, Inc.*, 488 F.2d 14, 717-19 (5th Cir. 1974)).

1. **Results Obtained**.

Civil rights laws in general depend heavily upon private enforcement. *Hensley v. Eckerhart*, 461 U.S. 424, 445(1983). Where the ADA is concerned, "private enforcement suits are the primary method of obtaining compliance with the Act," *D'Lil v. Best Western Encina Lodge & Suites*, 538 F. 3d 1031, 1036 (9th Cir 2008); *Doran, v. 7-Eleven, Inc.*, 524 F.3d at 1041(same). Because of the importance of the federal rights private enforcement actions vindicate, such actions are, as the Supreme Court noted, "private in form only." *Guardian Ass'n v. Civil Service Comm'n*, 463 U.S. 582 (1983). In *Villano v. Boynton Beach*, 254 F.3d 1302, 1306 (11th Cir. 2001), the Eleventh Circuit held that "successful civil rights actions vindicate a public interest ...[and] [p]ublic benefit is a distinct measure of success in civil rights actions and ... a court must account for that distinct measure of success when calculating an award of fees and costs."

As the result of this lawsuit, the Plaintiff shall obtain significant beneficial results which substantially increase the accessibility of Defendant's website to blind and visually disabled individuals.

2. **Experience, Reputation, and Ability of the Attorneys.**

Plaintiff's attorneys have significant litigation experience in both Federal and state court and have significant experience in civil rights cases, including ADA Title III litigation.

5

Roderick Hannah has over 33 years of litigation and trial experience in South Florida, including handling a wide array of cases in the Southern District of Florida.  As lead or sole counsel, he has handled many federal cases involving discrimination matters, including cases arising under the ADA in both the employment and public accommodation contexts.  He currently devotes a large portion of his practice to ADA Title III accessibility issues, in particular to issues involving company website accessibility.  *See* Affidavit of Roderick V. Hannah, Esq., attached as Exhibit "A".

Pelayo Duran, Mr. Hannah's co-counsel, has over 20 years of litigation experience in South Florida and has handled and been involved in numerous cases in the Southern District of Florida, including cases arising under the ADA involving public accommodation discrimination. He also devotes a substantial portion of his practice to ADA Title III website accessibility issues. *See* Affidavit of Pelayo M. Duran, Esq., attached as Exhibit "B".

### 3. Time and Labor Required.

Appended to Messrs. Hannah and Duran's respective supporting Affidavits as Exhibits "1" are copies of their respective time records documenting the time and effort which was required to obtain the resolution of this case. The time expended by Plaintiff's counsel in drafting this motion is also included.  In general, time incurred by Plaintiff's counsel in filing, preparing and litigating this fee application and any fee hearings thereon is compensable.  *See Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990); *Guerrero v. Commings*, 70 F.3d 1111 (9th Cir. 1995); *Davis v. City and County Of San Francisco*, 976 F.2d 1536, 1544 (9th Cir. 1992); *Valley Disposal, Inc. v. Central Vermont Solid Waste Mgmt. Dist.*, 71 F.3d 1053 (2nd Cir. 1995); *Lund v. Affleck*, 587 F.2d 75 (1st Cir. 1978); *Johnson v. State of Mississippi*, 606 F.2d 635 (5th Cir. 1979); *Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979).

As set forth in Messrs. Hannah and Duran's attached time records, Plaintiff's counsel spent a total of 10.7 hours working on this case. In addition, the time amounts in the proffered time records do not account for any attorney time and costs which shall be expended on post-judgment efforts such as continuing to check on Defendant's website/mobile site compliance. The time spent was reasonably necessary to vet, prepare and file the case and secure the final default judgment obtaining the complete injunctive relief requested in the Complaint and to making Defendant's website fully accessible to visually disabled persons, including Plaintiff, nationwide.

**4.    Novelty and Difficulty of the Questions Presented and the Skill Requisite to Perform the Legal Services Properly.**

It is estimated that there are very few firms nationwide that litigate Title III ADA claims, especially in the burgeoning and yet developing area of company website accessibility to blind and visually disabled persons. Effective representation of plaintiffs in ADA actions requires not only sophisticated general litigation skills, such as familiarity with the rules of evidence and procedure, but, in addition, presents numerous issues regarding entitlement to injunctive relief, Article III standing, barriers to access, undue burden, exemptions, new construction and alterations versus pre-ADA construction, extensive knowledge of the ADA and the applicable WCAGs (relevant ADA accessibility guidelines), the Technical Assistance Manual and a multitude of other guides issued by the Department of Justice, the developing body of case law issued by the courts nationwide, and finally whether remedial measures are "readily achievable." In addition, it is not unusual for Plaintiff's attorneys to find themselves opposed by the substantial financial and legal resources of corporate defendants.

For those reasons, the Plaintiff submit that the novelty and difficulty of the issues presented in ADA actions, and the skill requisite to properly address such issues, justify a higher

rate than many other areas of practice.

> **5.     Preclusion of Other Employment due to Acceptance of the Case and the Undesirability of the Case.**

As noted above, the United States Supreme Court, has recognized that civil rights advocates act as "private attorney generals." *See e.g., Hensley*, 461 U.S. at 445. The primary, and perhaps singular, reason public places are beginning to comply with the more than 20-year old obligations of the ADA is because of private enforcement suits. *See, Antoninetti v. Chipotle Mexican Grill, Inc.*, 613 F. 3d 971, 980 (9th Cir 2010), *cert. denied, Chipotle Mexican Grill, Inc., v. Antoninetti*, 2011 WL 645276 (79 USLW 3514, April 18, 2011). That notwithstanding, the efforts of individuals such as the Plaintiff and the attorneys who represent the disabled are "not pleasantly received," *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974). Indeed, another court in this District was far blunter in describing the reaction against such lawsuits as one of "vitriolic hostility." *Mallory v. Harkness*, 923 F.Supp. 1546, 1555 (S.D. Fla. 1996).

Because of the negative publicity and attitude that many have toward Title III ADA actions, Plaintiffs' counsel have predictably been precluded from other employment based on acceptance of the case. For instance, it is highly unlikely that a Plaintiffs' lawyers would attract business clientele who would pay hourly rates. It has been recognized that civil rights plaintiffs' work is oftentimes undesirable, and that plaintiffs' attorneys are economically impacted by their decision to help the civil rights litigant. As explained in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 719 (5th Cir. 1974):

> "Civil rights attorneys face hardships in their communities because of their desire to help the civil rights litigant.... Oftentimes his decision to help eradicate discrimination is not pleasantly received by the community or his contemporaries. This can have an economic impact on his practice which can be considered by the Court."

8

Additionally, in the instant case, the Plaintiff's rights, and those of all blind and visually disabled individuals, were vindicated by counsel working on this case, the time which could have been spent on other matters.

**6. Reasonable Hourly Rate, Customary Fee, and Fees Awarded in Similar Cases.**

A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonable, comparable skills, experience and reputation. *See, Marisol A. v. Giuliani*, 111 F. Supp.2d 381 (S.D.N.Y. 2000). The relevant community to which the Court should look is the District in which the case was brought. *Patrolmen's Benevolent Assn. of the City of New York, Inc. v. The City of New York*, 2003 WL 21782675 (S.D.N.Y. 2003); *AR v. New York City Department of Education*, 407 F.3d 65 (2d Cir 2005); *Access 4 All, Inc. v. Park Lane Hotel, Inc.*, 2005 WL 3338555 (S.D.N.Y. 2005).

In determining the reasonableness of the fees and hourly rate, it is appropriate to consider rates awarded in other cases. Because the attorney compensation is based on contingency, and payment has not been made, courts award the current prevailing market rate. The current market rate is the rate at the time of the fee petition, not the rate at the time the services were performed. This takes into account the delay in payment. *Lanni v. State of New Jersey*, 259 F.3d 146, 149-50 (3d Cir. 2001). Additionally, in considering the rates awarded in prior cases, courts adjust rates upward to account for inflation. It is especially important in this case, which has been in litigation for months, without the Plaintiff's counsel having received any payment to date.

Close to home, in the 2013 case of *Houston v. Arshak Corp.*, Case No. 13-cv-60752 (S.D. Fla. 2013) – a case resolved five years ago -- plaintiff's counsel was awarded $420.00 per hour [*see* ECF Nos. 15 & 17]. In *Access 4 All, Inc. v. The TJX Companies, Inc.*, Case No: 11-cv-80109 (S.D. Fla.) – an ADA case decided over seven years ago -- counsel for the *defendant*

9

represented to the Court that $450.00 per hour was the rate for "senior" attorneys. [*see* ECF No. 30, at 11-12]. In *Houston v. South Bay Investors*, Case No. 13-CV-80193 (S.D. Fla. July 25, 2013) – a case decided five years ago -- the Court found that the Plaintiff's requested hourly rate of $420.00 was "reasonable in light of counsels' experience and citation to other cases in this district wherein the courts approved an identical rate." In *Kennedy v. 5096 Forest Hill Investments, LLC*, Case No. 15-cv-81001, at ECF No. 21 (S.D. Fla. October 21, 2015) the Court found an hourly rate of $420 to be reasonable.

Courts in other jurisdictions have also approved rates ranging to $430 per hour in similar types of litigation. For example, in *Rodriguez v. McLoughlin*, 84 F.Supp.2d 417 (S.D.N.Y. 1999) – a case now nine years old -- the court awarded the supervising attorney in a civil rights action $425 per hour. Indeed, hourly rates in the $400 to $430 range are not limited to large firms. *See, e..., New York State NOW v. Pataki*, 2003 WL 2006608, at *2 (S.D.N.Y. Apr 30, 2003) (approving a rate of $430 an hour for a small civil rights litigator).

Plaintiff in the instant action is seeking $425.00 per hour for his attorneys' time. This amount is reasonable considering counsel's experience in this field, the contingent nature of the Case, and that it is in line with the prevailing market rate.

**7. Whether the Fee is Fixed or Contingent.**

The fee in the instant action was and is contingent. In fact, Plaintiff's counsel has incurred significant expenses, including filing and service of process fees, and an expert fee of $1.935.00. Moreover, there is no certainty that Plaintiff's counsel will receive any compensation at all. Therefore, in setting a reasonable hourly rate, Plaintiff submits that this Court should award the higher range of rates to account for the length of time and uncertainty that counsel will be paid at all.

**8. Time Limitations Imposed by the Client or Circumstances.**

Because the barriers to access complained of by Plaintiff restricted and/or limited Plaintiff's access to the subject mobile website, time was of the essence. Every day that passed while the undersigned did not work on the case and make every effort to expedite its resolution, by pursuing litigation, was another day that the website would remain inaccessible.

**9. Nature and Length of the Professional Relationship with the Client**

Messrs. Hannah and Duran have represented similarly disabled Plaintiffs in many other actions, and have a continuing relationship with their clients, including Plaintiff in this particular action. This has led to increased efficiency in the prosecution of this litigation.

**I.   Costs and litigation expenses.**

**A.  Taxable costs.**

Plaintiff seeks reimbursement of his statutory costs from Defendant, pursuant to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920. Pursuant to Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920, the Court shall award costs to the prevailing party in a lawsuit. Rule 54(d) creates a presumption in favor of awarding costs, which the opposing party must overcome. *Manor Healthcare Corp. v. Lomelo*, 929 F.3d 633, 639 (11th Cir. 1991).

The award of costs in favor of the prevailing party in federal court is governed by 28 U.S.C. § 1920 and Federal Rule of Civil Procedure 54. 28 U.S.C. § 1920 specifies the following as costs that a court may tax: (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all of any part of the stenographic transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees,

expenses, and costs of special interpretation services under section 1828 of this title. *See* 28 U.S.C. § 1920; *Barberi v. PDVSOL, Ltd. Liab. Co.*, No. 16-23243-CV-GAYLES/TUR, 2017 U.S. Dist. LEXIS 81267, at *27-28 (S.D. Fla. May 24, 2017).

The decision to award costs is discretionary with the Court, but the Court may tax items specifically enumerated in 28 U.S.C. § 1920, absent alternative contractual or statutory authority. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987). In the instant case, Plaintiff's Counsel incurred taxable costs in the amount of $526.50, consisting of the case filing fee ($400.00), the cost for service of process of the Complaint on Defendant ($105.30), and the costs for copies of papers that were necessarily obtained for use in this case. The allowable taxable costs per 28 U.S.C. § 1920(1) and (4) are thus $$526.50

### B. Expert witness expenses (non-taxable costs).

Expert witness fees are ordinarily not taxable costs, however, pursuant to 42 U.S.C. §12205, such fees may be taxed as litigation expenses in ADA cases. *Fox v. The Marquis Corp.*, 2010 U.S. Dist. LEXIS 25831, 2010 WL 1010871 at *7 (S.D. Fla. March 15, 2010) (citing *Lovell v. Chandler*, 303 F.3d 1039, 1058-59 (9th Cir. 2002)); *Hansen v. Deercreek Plaza, LLC,* 420 F. Supp. 2d 1346, 1353 (S.D. Fla. 2006) ("A prevailing ADA plaintiff may recover expert fees as a litigation expense.") (internal citation omitted). As set forth on the detailed invoice for services of Plaintiff's expert, Robert D. Moody, attached as Exhibit "E", Mr. Moody spent considerable time and effort, totaling 4.3 hours, to analyze Defendant's website prior to the filing of the lawsuit, and then continued to provide expert input as the case progressed. Thus, Plaintiff's expert performed valuable services at the rate of $450.00 per hour for the progress and outcome of the case, and Plaintiff is entitled to expert witness fees as non-taxable costs in the total amount of $1,935.00.

## II. Conclusion.

Based on the foregoing, Plaintiff seeks and believes that he is entitled to an Order entitling him to his reasonable attorney's fees, taxable costs, and litigation expenses as the prevailing party in this litigation. Plaintiff submits that an award of his attorney's fees in the total amount of $4,574.50, taxable costs in the amount of $526.50, and litigation expenses – i.e., expert witness fees – in the amount of $1,935.00.

Respectfully submitted,

| | |
|---|---|
| **RODERICK V. HANNAH, ESQ., P.A.** | **LAW OFFICE OF PELAYO DURAN, P.A.** |
| Counsel for Plaintiff | Co-Counsel for Plaintiff |
| 8751 W. Broward Blvd., Suite 303 | 4640 N.W. 7th Street |
| Plantation, FL 33324 | Miami, FL 33126-2309 |
| T. 954/362-3800 | T. 305/266-9780 |
| 954/362-3779 (Facsimile) | 305/269-8311 (Facsimile) |
| Email: rhannah@rhannahlaw.com | Email: pduran@pelayoduran.com |
| | |
| By  *s/ Roderick V. Hannah* | By  *s/ Pelayo M. Duran* |
|       RODERICK V. HANNAH |       PELAYO M. DURAN |
|       Fla. Bar No. 435384 |       Fla. Bar No. 0146595 |

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2nd day of October, 2019, a true and correct of the foregoing was electronically filed and was served via regular first class postage paid U.S. Mail on the following:

INTRIGUE COUTURE, INC., a Florida
for-profit corporation,
Registered Agent:
Barbara Portland
8709 Banyan Court
Tamarac, FL 33321

Rachael Oney, Authorized Employee
Intrigue Couture, Inc.
6000 Glades Road
Boca Raton, FL  33431

/s/  *Roderick V. Hannah*
         Roderick V. Hannah